# EXHIBIT 1

1

Christopher M. Goodman (#023231)
LAW OFFICE OF CHRISTOPHER GOODMAN PLC

2

45 W. Jefferson St., Suite 512

3

Phoenix, AZ 85003
(602) 253-1000

4

chris@goodmanlegal.com

5

*Attorney for Megan Munro*



MAY 2 2 2018



CHRIS DEROSE, CLERK
AM. VALENZUELA
DEPUTY CLERK

6

7

8

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9

## IN AND FOR THE COUNTY OF MARICOPA

10

11

MEGAN MUNRO, an unmarried
woman,

12

13

            Plaintiff,

14

    vs.

15

NATIONWIDE INSURANCE
COMPANY OF AMERICA, a Delaware
corporation authorized to do business in
Arizona; and various unknown and/or
fictional individuals and entities,

16

17

18

            Defendants.

NO.    CV2018-007752

**COMPLAINT**

(Breach of Contract; Breach of Implied
Covenant of Good Faith and Fair Dealing;
Constructive Trust)

19

20

21

22

23

## NATURE OF THE ACTION

24

    This is a breach of contract and insurance bad faith action. Plaintiff Megan Munro

25

obtained a homeowners' insurance policy from Defendant Nationwide Insurance

26

Company of America ("Nationwide") in 2012, renewing the policy annually.  In 2016,

27

Ms. Munro rented the property to a third party, but continued paying for full homeowners'

28

insurance coverage with Nationwide. In June 2017, the Insured Property suffered a

*Law Office of Christopher Goodman PLC*
*45 W. Jefferson St., Suite 512*
*Phoenix, AZ 85003*
*(602) 253-1000*

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

catastrophic fire, rendering it a total loss. Ms. Munro timely made her claim and cooperated with Nationwide.  Almost two months after the fire, Nationwide denied Ms. Munro's claim, asserting that in 2016 she should have purchased a much less expensive landlord's policy. Despite asserting that Ms. Munro's policy was void for over a year, Nationwide has retained all of the premiums she paid.

Nationwide failed to service the policy, failed to fully investigate the claim, and relied upon the legal analysis of claims adjuster to deny the claim based upon a tenuous reading of an ambiguous policy term outside the reasonable expectations of its insured. Ms. Munro is entitled to recover the policy limits, her attorneys' fees, and damages for Nationwide's bad faith.

## COMPLAINT

For her Complaint, Plaintiff Megan Munro alleges as follows:

### JURISDICTION AND VENUE

1. Ms. Munro is a resident of the State of Arizona and currently resides within Maricopa County.

2. Nationwide is a Delaware corporation that is authorized to do business and doing business within the State of Arizona.  Nationwide sells insurance policies to Arizona residents to insure properties located within Arizona.

3. The Insured Property at the center of this dispute is located within Maricopa County, Arizona.

4. The events at the center of this dispute all took place within the State of Arizona and Maricopa County.

5. Jurisdiction and venue are proper in this Court.

### POLICY HISTORY

6. In 2012, Ms. Munro purchased property at 7114 W. Beryl Avenue in Peoria, Arizona (the "Insured Property").

7. At that time Ms. Munro contacted a Nationwide-approved agent for a homeowner's insurance policy.

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

8. Ms. Munro was sold policy No. HON 00339859467 (the "Policy") to cover the Insured Property. (Exhibit 1, Policy.)

9. Ms. Munro made timely payments under the Policy through her loan serving company.

10. The Policy automatically renewed every year.

11. For the five years between her purchase and this claim, Ms. Munro was never contacted by Nationwide or its agent upon these renewals to determine whether the insurance was sufficient for the Insured Residence or whether there had been any changes to Ms. Munro's insurance needs that would warrant modification of the Policy.

12. The Policy covered the structure as well as the personal property contents and the insured's loss of use. (Policy, at 4-6.)

13. The Policy's limits for structure coverage at the most recent automatic renewal before this claim was $121,700.00, plus 10% of that limit for increased costs due to ordinances, laws, or applicable codes, for a total structure coverage of $133,870.00. (Declarations and Policy at 9-10.)

14. The Policy also contained coverage for $85,000.00 for contents as well as the actual loss suffered by the insured for loss of use over 12 months. Id.

15. The Insured Property was used as Ms. Munro's primary residence from its purchase in 2012 until March 2016.

16. In January 2016, Ms. Munro rented another residence.

17. Ms. Munro understood and reasonably expected that the Policy would continue to insure the structure at the Insured Property.

18. Ms. Munro rented the Insured Property to a third party from March 2016 to March 2017.

19. Ms. Rented the Insured Property to a different third party beginning June 1, 2017.

20. At all relevant times, Ms. Munro continued to pay premiums for full homeowner's coverage under the Policy.

3

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

21. At no point after the initial Policy purchase in 2012 did Nationwide or its agent contact Ms. Munro to determine whether her Policy was sufficient to meet her insurance needs or any changed circumstances.

22. Nationwide continued to accept Ms. Munro's premiums from March 2016 to the date of the loss described herein in June 2017.  These premiums were for a homeowner's insurance policy that covered not only the structure but the personal property contents, the insured's loss of use, and the insured's personal liability.

23. Had Ms. Munro contacted Nationwide and sought a landlord's policy, her premiums would have dropped considerably, as the only coverage she would need would be for the structure.  Nationwide's risk exposure would have at least dropped by $85,000.00 for personal property as well as the actual losses for 12 months of loss of use.

24. A Landlord's policy on the Insured Property would have been cheaper than Ms. Munro's homeowner's policy.

25. Ms. Munro's rental of the Insured Property did not increase Nationwide's risk—instead, it significantly reduced that risk.

## LOSS AND CLAIM

26. On June 7, 2017, the Insured Property was destroyed in an electrical fire.

27. On the same day, Ms. Munro promptly notified Nationwide of the loss as required by the Policy.

28. Ms. Munro cooperated with Nationwide during its investigation of the damage.

29. Nationwide claims associate Don Richert inspected the Insured Property on June 12.

30. Ms. Munro attended the inspection and, having no reason to believe that her rental of the Insured Property would be an issue, advised Mr. Richert that the property was rented to a third party.

31. On June 21, Mr. Richert did an Xactimate estimate concluding that repairing the structure loss would cost at least $116,597.68, remarkably close to the policy limits

4

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

1   at the time.  (Exhibit 2, Munro Structure Estimate 6/21/17.)

2   32. Nationwide's own investigation concluded that the Insured Property was a total

3   loss.

4   33. Ms. Munro waited for over a month for Nationwide to begin payment on the claim

5   so she could rebuild the Insured Property.

6   34. Instead, over a month after the estimate and seven weeks after the loss, Mr.

7   Richert—who is a claims associate, not in the legal department much less an

8   insurance coverage attorney—issued a denial of claim letter. (Exhibit 3, 7/27/17

9   Letter.)

10  35. The denial relied upon the definition of "residence premises" in the Policy.  The

11  denial concluded that "our review showed that you are not living at the 'residence

12  premises' insured under this policy agreement. Therefore we are unable to extend

13  coverage for the damage to your home." (Id. at 3.)

14  36. Nationwide's denial of the claim contained zero legal analysis beyond simply

15  reciting ambiguous contract terms.

16  37. The Policy, at two separate points, simply referred to the address on the

17  Declarations page as the insured premises.

18  38. The Policy terms cited by Nationwide defined "residence premises" but contained

19  semicolons that ambiguously separate the definitions, and contained no definition

20  of the term "reside" that would give a layperson like Ms. Munro notice that her

21  rental of the Insured Property would void coverage.

22  39. The denial essentially argued that Ms. Munro's policy had been void for over a

23  year, since she rented the property in March 2016.

24  40. The denial did not include a notice of cancellation of the policy, dated either on the

25  date of the denial nor retroactively to March 2016.

26  41. The denial did not include a refund of the premiums paid by Ms. Munro since

27  March 2016.

28  42. Nationwide retained (and still retains) the premiums paid by Ms. Munro since

5

1    March 2016.

43. In response to the denial letter, Ms. Munro retained a public adjuster in August 2017, who demanded Nationwide pay the claim based upon the language in the Policy.  Nationwide again denied coverage through its claims associate Mr. Richert, orally and without any legal analysis nor a coverage opinion.

44. Ms. Munro retained counsel who also demanded payment of the claim in December 2017, providing some legal analysis not only of the Policy terms but also Arizona law regarding reasonable expectations and insurance bad faith.

45. Other than a brief conversation between that counsel and Mr. Richert, once again orally denying the claim with zero legal analysis, Nationwide did not respond.

46. Nationwide apparently felt that the legal opinions of its claims associate Mr. Richert—who inspected the property and did the repair estimate—were sufficient to deny coverage and keep Ms. Munro's premiums.

47. Today, ten months after the loss, the Insured Property still sits destroyed and uninhabitable in Peoria, Arizona.

48. Ms. Munro continues to pay her mortgage on the destroyed and uninhabitable Insured Property.

## THE POLICY LANGUAGE SUPPORTS COVERAGE

49. An ambiguity exists in an insurance policy when the language of the policy is unclear and can be reasonably construed in more than one sense.  *Potter v. U.S. Specialty Ins. Co.*, 209 Ariz. 122, 98 P.3d 557 (App. 2004).

50. Ambiguous undefined terms in insurance policy should be construed against insurer and in common laymen's language. *United Am. Life Ins. Co. v. Beadel*, 13 Ariz.App. 196, 475 P.2d 288 (App. 1970); *Tolifson v. Globe American Cas. Co.*, 138 Ariz. 31, 672 P.2d 983 (App.1983).

51. Exclusions in insurance contract are strictly construed in favor of coverage and against insurer. *Warfe v. Rocky Mountain Fire & Cas. Co.*, 121 Ariz. 262, 589 P.2d 905 (App.1978).

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

6

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

52. Nationwide relies completely upon ambiguous and undefined contract terms to deny Ms. Munro the benefit of her bargain.

53. These terms should be construed strictly against Nationwide and in favor of Ms. Munro, and Ms. Munro will only be held to a layperson's understanding of the terms—which will support coverage.

54. The Policy states at two separate points that the insured premises is simply the address that is listed on the Declarations page.

55. The ambiguous definition of "residence premises" will support coverage.  The "residence premises" is defined using an undefined term: reside.  Nowhere in the policy is there a definition of this term.  And further, within the definition, the "residence premises" is once again defined as what is shown in the Declarations page—a term that comes after a series of semicolons which separate the term "reside" in them from "which is shown as the 'residence premises' in the Declarations."  A layperson like Ms. Munro would be reasonable in concluding that her coverage continued despite her rental of the Insured Property.

56. There is no clear indicator in the Policy, to a layperson, that the rental of the Insured Property will void coverage, or a specific exclusion where property has been rented.

57. Ms. Munro applied for coverage in 2012 with the expectation that the Insured Property would be insured against fire loss.  There was (and is) no provision in the Policy that expressly excludes losses that occur when the Insured Property is rented to a third party

58. It is only through a tenuous reading on an ambiguous term that Nationwide points to that would give the insured notice that such a loss would be excluded.  This is a non-negotiated household exclusion that is subject to the reasonable expectations doctrine.

59. Nationwide and its agent(s)[1] happily accepted premiums (and commissions) for

---

[1] Nationwide and its agent sold a policy in 2012 and ignored servicing that policy in any meaningful way until after this claim arose.  Insurance agents cannot be considered as

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

1   years of insurance on the Insured Property—premiums that were likely almost

2   double what a landlord policy would have been.

3   60. Despite denying coverage nine months ago, and contending that the Policy had

4   been void since March 2016, Nationwide still retains those premiums.

5   61. It was and is reasonable for Ms. Munro to expect that a loss such as this would be

6   covered.

7   62. If an insurer denies coverage without a reasonable basis and with reckless disregard

8   for the rights of its insured—including, in many cases, an inadequate investigation

9   or coverage opinion—that insurer can be liable for bad faith. *Norcia v. Equitable*

10   *Life Assurance Society of U.S.*, 80 F.Supp.2d 1047 (D. Ariz. 2000).

11   63. In this case, Nationwide has relied solely upon the legal opinion of a claims

12   associate to deny coverage, with no legal analysis, despite multiple demands by

13   Ms. Munro, insurance professionals, and even counsel, leaving Ms. Munro with a

14   burned-down house and no benefit of what she contracted and paid for.

15   

16   ### COUNT ONE: BREACH OF CONTRACT

17   

18   64. All preceding paragraphs are incorporated into this Count as though set forth

19   completely herein.

20   65. The Policy sold by Nationwide and its agent to Ms. Munro is a valid contract.

21   66. Ms. Munro timely made premium payments from 2012 through to June 2017.

22   Nationwide accepted and retains those payments.

23   

24   67. By the terms of the Policy, if a loss occurred at the Insured Property, Nationwide

25   would indemnify Ms. Munro for her loss, up to the policy limit of that loss, and in

26   _____

27   professional without assuming the responsibilities and duties generally associated with
such a status. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383,
398, 682 P.2d 388, 403 (1984). One of those responsibilities is to exercise that degree of
28   care ordinarily to be expected from others in their profession.

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

the case of a structure loss, 10% additional for repairs or improvements required by code or law.

68. On June 12, 2017, the Insured Property suffered a fire and was rendered uninhabitable.

69. Nationwide's own claims associate estimated that the structure loss was roughly the policy limits of the Policy.

70. Ms. Munro timely reported the loss and cooperated with Nationwide's investigation, thereby fulfilling her obligations under the policy.

71. Nationwide, however, denied coverage and refuses to indemnify Ms. Munro for the loss suffered at the Insured Property.

72. Nationwide's denial constitutes a breach of contract.

73. Ms. Munro suffered damages as a result of Nationwide's breach, including but not limited to the full amount necessary to repair the Insured Property, which Nationwide itself already estimates will be at or near the policy limits of the Policy.

### COUNT TWO: BREACH OF IMPLIED COVENANT

74. All preceding paragraphs are incorporated into this Count as though set forth completely herein.

75. In Arizona, every contract carries with it an implied covenant of good faith and fair dealing, wherein each party is entitled to expect that the other party will act in good faith and each party will receive the benefit of their bargain.

76. A party breaches the implied covenant of good faith and fair dealing when it acts in bad faith and denies the other party the benefit of their bargain.

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

77. In this case, Nationwide has breached the implied covenant by acting in bad faith and denying Ms. Munro the benefit of the bargain she reasonably expected.

78. Ms. Munro has suffered damages as a result of Nationwide's breach, including but not limited to the indemnity payment for the repair of the Insured Property, exemplary damages, and attorneys' fees and costs.

## COUNT THREE: INSURANCE BAD FAITH

79. All preceding paragraphs are incorporated into this Count as though set forth completely herein.

80. In Arizona, insurance companies have a special relationship with their customers.

81. Part of this special relationship is that insurers must act in good faith when dealing with their policyholders; they must reasonably investigate claims and cannot deny claims without a reasonable basis.

82. In this case, Nationwide has not acted in good faith in dealing with its policyholder Ms. Munro.

83. Nationwide failed to reasonably investigate Ms. Munro's claim and repeated assertions that the loss at the Insured Property was covered. Nationwide instead relied upon the legal opinion of a non-attorney claims associate, with zero analysis, to outright deny Ms. Munro's claim, and refused to revisit the decision or address it in any meaningful way despite Ms. Munro's repeated demands.

84. Nationwide denied Ms. Munro's claim without a reasonable basis to do so, necessitating this action.

85. Ms. Munro has been damaged as a result of Nationwide's bad faith, in an amount including the indemnity payment for the loss at the Insured Property, exemplary damages, attorneys' fees and costs, and any other damages flowing from

1    Nationwide's bad faith.

2

3    86. Ms. Munro is entitled to recover these damages from Nationwide.

4    WHEREFORE, for her Complaint as fully stated above, Plaintiff Megan Munro prays for

5    judgment in their favor and against Nationwide as follows:

6

7        A. For damages in the amount of the policy limits of the Policy in effect at the time of

8           the loss plus 10% additional for code compliance, totaling $133,870.00;

9        B. For exemplary damages in an amount to be determined by a jury;

10       C. For her attorneys' fees, costs, and expenses pursuant to both the applicable

11          agreements as well as A.R.S. 12-341 and 12-341.01, as well as any other applicable

12          statute including 12-349; and

13       D. Awarding such other and further relief as this Court deems just and proper.

14   DATED this 10th day of May, 2018.

15

16

17                           LAW OFFICE OF CHRISTOPHER GOODMAN PLC

18                      By

19                           Christopher M. Goodman
20                           45 W. Jefferson St., Suite 512
                             Phoenix, Arizona 85003
21                           Attorney for Plaintiff

22

23

24

25

26

27

28

*(left margin, vertical)* Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

11

# EXHIBIT 2

MICHAEL K. JEANES. CLERK
BY
*D. Rodriguez*  DEP
FILED
**2018 JUN 21. PM 3: 55**

1  Christopher M. Goodman (#023231)
2  LAW OFFICE OF CHRISTOPHER GOODMAN PLC
   45 W. Jefferson St., Suite 512
3  Phoenix, AZ 85003
   (602) 253-1000
4  chris@goodmanlegal.com
   *Attorney for Megan Munro*
5

ORIGINAL

6

7

8              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                 **IN AND FOR THE COUNTY OF MARICOPA**

10

11  MEGAN MUNRO, an unmarried         NO.    CV 2018-007732
    woman,
12
                 Plaintiff,
13                                            **SUMMONS**
           vs.
14
    NATIONWIDE INSURANCE
15  COMPANY OF AMERICA, a Delaware
    corporation authorized to do business in    If you would like legal advice from a lawyer,
16  Arizona; and various unknown and/or          contact the Lawyer Referral Service at
    fictional individuals and entities,                   602-257-4434
17                                                            or
                 Defendants.                        www.maricopalawyers.org
18
                                                       Sponsored by the
19                                              Maricopa County Bar Association

20

21  **THE STATE OF ARIZONA TO:**

22      Nationwide Insurance Company of America
        c/o C T CORPORATION SYSTEM
23      3800 N CENTRAL AVE
        SUITE 460
24      PHOENIX, AZ 85012

25

26  YOU ARE HEREBY SUMMONED and required to appear and defend in the above-
    entitled action in the above-entitled Court within 20 days, exclusive of the date of service,
27
    after service of this Summons upon you if served within the State of Arizona; or within 30
28  days, exclusive if the date of service, if served without the State of Arizona, and you are

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

1   hereby notified that in case you fail to so do, judgment by default may be entered against

2   you for the relief demanded in the Complaint.

3   Requests for reasonable accommodation for persons with disabilities must be made to the

4   division assigned to the case by the party needing accommodation or his/her counsel at least

5   three (3) judicial days in advance of a scheduled proceeding. Requests for an interpreter for

    persons with limited English proficiency must be made to the division assigned to the case

6   by the party needing the interpreter and/or translator or his/her counsel at least ten (10)

7   judicial days in advance of a scheduled court proceeding.

8   The names and address of Plaintiff's attorneys are:

9

10              Christopher M. Goodman (#023231)

                LAW OFFICE OF CHRISTOPHER GOODMAN PLC

11              45 W. Jefferson Street

12              Suite 512

                Phoenix, Arizona 85003

13              (602) 253-1000

14              chris@goodmanlegal.com

15

16  GIVEN UNDER MY HAND and seal of the above-referenced Court of Arizona, Maricopa

    County this _____ day of _____ 2017.   CHRIS DEROSE, CLERK

17          MAY 2 2 2018

18                      MICHAEL K. JEANES, CLERK

                        MARICOPA COUNTY SUPERIOR COURT

19

20

21

22          By:_____

23              Deputy Clerk

24          A. Valenzuela

                Deputy Clerk

25

26

27

28

2

# EXHIBIT 3

1    Christopher M. Goodman (#023231)
2    LAW OFFICE OF CHRISTOPHER GOODMAN PLC
3    45 W. Jefferson St., Suite 512
     Phoenix, AZ 85003
4    (602) 253-1000
     chris@goodmanlegal.com
5    *Attorney for Megan Munro*

MICHAEL K. JEANES, CLERK
BY ___M. Valenzuela___ DEP
FILED

18 MAY 22  PH 12: 46

6

7

8       **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9        **IN AND FOR THE COUNTY OF MARICOPA**

10

11    MEGAN MUNRO, an unmarried    NO.    CV 2018-007752
     woman,
12

13          Plaintiff,    **CERTIFICATE OF COMPULSORY**
                              **ARBITRATION**
14      vs.

15    NATIONWIDE INSURANCE
     COMPANY OF AMERICA, a Delaware
16    corporation authorized to do business in
     Arizona; and various unknown and/or
17    fictional individuals and entities,

18          Defendants.

19

20

21       Undersigned counsel certifies that this case is NOT subject to compulsory

22 arbitration because the amount in controversy exceeds local limits, as provided by Rules

23 72-76, Arizona Rules of Civil Procedure.

24

25

26

27

28

1  DATED this 10th day of May, 2018.

2

3  LAW OFFICE OF CHRISTOPHER GOODMAN PLC

4

By _____

5

6  Christopher M. Goodman
7  45 W. Jefferson St., Suite 512
   Phoenix, Arizona 85003
8  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Office of Christopher Goodman PLC
45 W. Jefferson St., Suite 512
Phoenix, AZ 85003
(602) 253-1000

2

# EXHIBIT 4



**Kiwi**

Process Service
Order No: 20181828
Client Ref: CV2018-007732;
MUNRO V. NATIONWIDE

MICHAEL K. JEANES, CLERK
BY
D. Rodriguez DEP
FILED

**2018 JUN 21  PM 3: 54**

IN THE MARICOPA COUNTY SUPERIOR COURT
FOR THE STATE OF ARIZONA

MEGAN MUNRO,
           Plaintiff(s)/Petitioner,                    CASE NO.: CV2018-007732

vs.

NATIONWIDE INSURANCE COMPANY OF AMERICA; ET AL.,

           Defendant(s)/Respondent.                    **DECLARATION OF SERVICE**

I, Bruce Comer #Mc-7307, the undersigned, declares under the penalty of perjury: I am a certified private process server in Maricopa County and I am fully qualified pursuant to A.R.S. Rule 4(e), governing Service of Process in the State of Arizona to serve process in this case. I received for service the following documents in this action:

- **SUMMONS; COMPLAINT; CERTFICATE RE: COMPULSORY ARBITRATION**

from **LAW OFFICE OF CHRISTOPHER GOODMAN PLC** located in Phoenix, Arizona on 6/18/2018 8:13. I personally served copies of the documents listed above on those named in the manner, date, and time listed below. All services except where noted were made in Phoenix, Arizona.

**ENTITY:**          **NATIONWIDE INSURANCE COMPANY OF AMERICA**
                     **C/O CT CORPORATION SYSTEM**

**DATE & TIME:**     6/18/2018 9:24
**ADDRESS:**         3800 NORTH CENTRAL AVENUE, SUITE 460 PHOENIX, AZ, 85012, the usual place of business.
**MANNER:**          by serving Jaquelynn O'campo, Service Of Process Coordinator, a person authorized to accept
                     service.

**DESCRIPTION:**
**NOTES:**

                     Date:  June 20, 2018

                                                        Bruce Comer #Mc-7307

| STATEMENT OF COSTS | |
|---|---|
| SERVICE | 16.00 |
| MILEAGE | 16.00 |
| RUSH FEES | |
| ADDITIONAL MILEAGES | |
| SKIP TRACE | |
| SPECIAL HANDELING | |
| STAKEOUT | |
| DOCUMENT PREPARATION | 10.00 |
| **TOTAL** | **$42.00** |

# EXHIBIT 5



THE LAW OFFICE OF
# CHRISTOPHER GOODMAN

CHRISTOPHER M. GOODMAN
chris@goodmanlegal.com

April 9, 2018

## VIA FEDERAL EXPRESS

Mark Howard
Chief Legal Officer
Nationwide Insurance Co. Of America
Nationwide Headquarters
One Nationwide Plaza
Columbus, Ohio 43215-2220

      Re:    *Megan Munro, Nationwide Claim Number 352101-GF*

Dear Mr. Howard:

This firm represents Nationwide Insurance Company of America's (Nationwide's) insured Megan Munro regarding her claim for indemnity related to a June 2017 fire at a residence she owns.

Nationwide has already determined that the loss exceeds the policy limits. Yet Nationwide has now thrice denied her claim in bad faith, keeping her premiums yet asserting her coverage was void, with zero investigation and apparently without notification to the legal department much less a coverage opinion. I write to demand that Nationwide immediately tender the $133,870.00 policy limits or Ms. Munro will file the enclosed lawsuit in Maricopa County Superior Court for breach of contract and insurance bad faith.

## POLICY HISTORY

In 2012, Ms. Munro purchased property at 7114 W. Beryl Avenue in Peoria, Arizona (the "Insured Property"). At that time Ms. Munro contacted a Nationwide-approved agent for a homeowner's insurance policy. Ms. Munro was sold policy No. HON 00339859467 (the "Policy") to cover the Insured Property. Ms. Munro made timely payments under the Policy through her loan serving company. The Policy automatically renewed every year. For the five years between her purchase and this claim, Ms. Munro was never contacted by Nationwide or its agent upon these renewals to determine whether the insurance was sufficient for the Insured Residence or whether there had been any changes to Ms. Munro's insurance needs that would warrant modification of the Policy.

Regarding covered losses, the Policy stated the following:

    A.  Coverage A – Dwelling

        1.  We cover:

    a.  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling.

(Policy, at p. 3.)  The Declarations page listed Ms. Munro's residence at 7114 W. Beryl Avenue as the insured address.  (Declarations.)  The Policy defined "insured location" as:

    a.  The "residence premises";

    b.  The part of other premises, other structures and grounds used by you as a residence; and

        1.  Which is shown in the Declarations; or

        2.  Which is acquired by you during the policy period for your use as a residence;

(Policy, at 2.)  The Policy defined "residence premises" as follows:

    a.  The one family dwelling where you reside;

    b.  The two, three, or four family dwelling where you reside in at least one of the family units;

    c.  That part of any other building where you reside;

And which is shown as the "residence premises" in the Declarations.

(Policy, at 3.)  The Policy does not contain a definition of "reside."  Id.

The Policy covered the structure as well as the personal property contents and the insured's loss of use.  (Policy, at 4-6.)  The Policy's limits for structure coverage at the most recent automatic renewal before this claim was $121,700.00, plus 10% of that limit for increased costs due to ordinances, laws, or applicable codes, for a total structure coverage of $133,870.00.  (Declarations and Policy at 9-10.)  The Policy also contained coverage for $85,000.00 for contents as well as the actual loss suffered by the insured for loss of use over 12 months.  Id.

The Insured Property was used as Ms. Munro's primary residence from its purchase in 2012 until March 2016.  In March 2016, Ms. Munro rented another residence—purchasing a policy with a different insurer to insure that location, rather than relying upon her Policy with Nationwide to cover the new premises.  Ms. Munro rented the Insured Property to a third party from March 2016 to the date of the loss.  Ms. Munro continued to pay premiums for full homeowner's coverage under the Policy.  Again, at no point after the initial Policy purchase in 2012 did Nationwide or its agent contact Ms. Munro to determine whether her Policy was sufficient to meet her insurance needs or any changed circumstances.

Nationwide happily accepted Ms. Munro's premiums.   And these premiums were for a homeowner's insurance policy that covered not only the structure but the personal property contents as well as the insured's loss of use.  Had Ms. Munro contacted Nationwide and sought a landlord's policy, her premiums would have dropped considerably, as the only coverage she would need would be for the structure.  Nationwide's risk would have dropped by $85,000.00 for personal property as well as the actual losses for 12 months of loss of use.  Nationwide's exposure would have been cut in half, and the premiums would have dropped as a result.  Ms. Munro's rental of the Insured Property did not increase Nationwide's risk—instead, it significantly cut that risk.  Yet Nationwide continued accepting full premiums.

## LOSS AND CLAIM

On June 7, 2017, the Insured Property was destroyed in an electrical fire.  Thankfully, no one was injured in the loss, and Ms. Munro's tenant was able to remove their contents and find a new residence.  On the same day, Ms. Munro promptly notified Nationwide of the loss as required by the Policy, and cooperated with Nationwide during its investigation of the damage.

Nationwide claims associate Don Richert inspected the Insured Property on June 12.  Ms. Munro attended the inspection and, having no reason to believe that her rental of the Insured Property would be an issue here, advised Mr. Richert that the property was rented to a third party.  On June 21, Mr. Richert did an Xactimate estimate concluding that repairing the structure loss would cost at least $116,597.68, remarkably right at the policy limits at the time.  (Munro Structure Estimate 6/21/17.)  Nationwide's own investigation concludes that the Insured Property was a total loss.

Ms. Munro waited for over a month for Nationwide to begin payment on the claim so she could rebuild the Insured Property.  Instead, over a month after the estimate and seven weeks after the loss, Mr. Richert—who is a claims associate, not in the legal department much less an insurance coverage attorney—issued a denial of claim letter. (7/27/17 Letter.) The denial relied upon the definition of "residence premises" in the Policy.  The denial concluded that "our review showed that you are not living at the 'residence premises' insured under this policy agreement. Therefore we are unable to extend coverage for the damage to your home." (Id. at 3.)

Ms. Munro was not asking for coverage to be "extended." She was simply asking for the coverage she had paid for—payments which Nationwide happily accepted, and even after essentially taking the position that Ms. Munro had no coverage from March 2016 forward, still retains.  Nationwide's denial of the claim contained zero legal analysis beyond simply reciting the ambiguous contract terms.  Terms which, at two separate points, referred to the address on the Declarations page as the insured premises. And also terms which defined "residence premises" but contained semicolons that ambiguously separate the definitions, and contained no definition of the term "reside" that would give a layperson like Ms. Munro notice that her rental of the Insured Property would void coverage.

3

Ms. Munro retained a public adjuster and demanded Nationwide pay the claim based upon the language in the Policy. Nationwide again denied coverage through its claims associate Mr. Richert. Ms. Munro retained other counsel who also demanded payment of the claim, providing some legal analysis not only of the Policy terms but also Arizona's incredibly insured-friendly law regarding reasonable expectations and insurance bad faith. Other than a brief conversation between that counsel and Mr. Richert once again denying the claim, Nationwide did not respond. Nationwide apparently felt that the legal opinions of its claims associate Mr. Richert—who inspected the property and did the repair estimate—were sufficient to deny coverage and keep Ms. Munro's premiums.

Now, nine months after the loss, the Insured Property still sits destroyed and uninhabitable in Peoria. Ms. Munro continues to pay her mortgage on the Insured Property.

## LEGAL ANALYSIS

Nationwide's repeated denials, apparently without even a second thought by legal counsel much less a coverage opinion, has forced Ms. Munro to retain this firm as litigation counsel for an action against Nationwide for breach of contract and insurance bad faith. After review of the terms and applicable law, the Policy is not nearly as absolute as Nationwide's claims associate concluded. I'm sure I don't need to educate you on how insured-friendly Arizona law is. And I'm also sure that I don't need to remind you how the same language has been examined and found to be ambiguous in other states.

An ambiguity exists in an insurance policy when the language of the policy is unclear and can be reasonably construed in more than one sense. *Potter v. U.S. Specialty Ins. Co.*, 209 Ariz. 122, 98 P.3d 557 (App. 2004). Ambiguous undefined terms in insurance policy should be construed against insurer. *Tolifson v. Globe American Cas. Co.*, 138 Ariz. 31, 672 P.2d 983 (App.1983). Undefined terms in policy should be construed against insurer and in common laymen's language. *United Am. Life Ins. Co. v. Beadel*, 13 Ariz.App. 196, 475 P.2d 288 (App. 1970). If a clause in an insurance policy may be susceptible to different constructions, rather than simply finding ambiguity and resorting to the *contra proferentem* doctrine, the Court of Appeals will first attempt to discern the meaning of the clause by examining the purpose of the clause in question, the public policy considerations involved, and the transaction as a whole. *California Cas. Ins. Co. v. American Family Mut. Ins. Co.*, 208 Ariz. 416, 94 P.3d (App. 2004) Exclusions in insurance contract are strictly construed in favor of coverage and against insurer. *Warfe v. Rocky Mountain Fire & Cas. Co.*, 121 Ariz. 262, 589 P.2d 905 (App.1978).

Here, Nationwide relies completely upon ambiguous and undefined contract terms to deny Ms. Munro the benefit of her bargain. These terms will be construed strictly against Nationwide and in favor of Ms. Munro. And Ms. Munro will only be held to a layperson's understanding of the terms—which will support coverage. First, the Policy states at two separate points that the insured premises is simply the address that is listed on the Declarations page. That alone will support coverage here. Additionally, the ambiguous definition of "residence premises" will support

4

coverage.  The "residence premises" is defined using an undefined term: reside.  Nowhere in the policy is there a definition of this term.  There is no clear indicator, to a layperson, that the rental of the Insured Property will void coverage.  And further, within the definition, the "residence premises" is once again defined as what is shown in the Declarations page—a term that comes after a series of semicolons which separate the term "reside" in them from "which is shown as the 'residence premises' in the Declarations."  A layperson like Ms. Munro would be reasonable in concluding that her coverage continued despite her rental of the Insured Property.

Nationwide has already been down this road and lost, just last year.  In *Lee v. Mercury Ins. Co. of Georgia,* the Georgia Court of Appeals found that this language was ambiguous. 343 Ga. App. 729, 733–35, 808 S.E.2d 116, 123–24 (2017)  The Court reviewed policy language almost identical to that here:

> We cover:

> the dwelling on the residence premises shown in the Declarations used principally as a private residence, including structures attached to the dwelling; materials and supplies located on the residence premises used to construct, alter or repair the dwelling or other structures on the residence premises.... (Emphasis in original.)

> The policy defines "residence premises" as follows:

> "Residence premises" means the one, two, three or four family dwelling, condominium or rental unit, other than structures and grounds, used principally as a private residence; where you reside and which is shown in the Declarations. (Emphasis in original.)

> The policy does not define the term "reside." And nowhere in the policy is there a reference to a "primary residence" or "secondary residence," much less a definition of these terms.[4] And unlike other insurance policies, it did not include an express condition requiring the insured to reside only at the residence premises.

> Based upon the placement of the semicolon in the definition of "residence premises," a layperson could reasonably understand the defined term to mean "the one, two, three or four family dwelling condominium or rental unit, other than structures and grounds, used principally as a private residence" *or* "where you reside and which is shown in the Declarations." "Punctuation is an important indicator of meaning." *Hill v. Nationwide Mut.*

*Fire Ins. Co.*, 214 Ga. App. 715, 717, 448 S.E.2d 747 (1994).[1] The semicolon is normally employed in marking off a series of sentences or clauses of coordinate value, that is, to separate consecutive phrases or clauses which are independent of each other grammatically, but dependent alike on some word preceding or following. In this case, the definition of "residence premises" could be read by a layperson as having two separate, consecutive clauses (definitions) dependent alike upon the preceding word "means."

343 Ga. App. at 733–35, 808 S.E.2d at 123–24. The Georgia Court of Appeals found that the term was ambiguous and subject to several different interpretations. The court ultimately remanded for proceedings to consider the dual interpretations to the clause. At a minimum, he same result is likely here.

Perhaps more importantly, Nationwide's denial will be subject to the "reasonable expectations" consideration applicable to the arcane exclusion that the "residence premises" definition purports to be. Under Arizona law, non-negotiated household exclusions in homeowner's policies may be unenforceable based on the insured's reasonable expectation of coverage. *Cretens v. State Farm Fire & Cas. Co.*, 60 F.Supp.2d 987 (D. Ariz. 1999). The reasonable expectation doctrine, permitting inquiry into surrounding facts and circumstances to determine whether, and to what extent, there was meeting of the minds between parties to insurance contract, should be applied when there is a conflict between the coverage offered and what the insured believed he was getting. *Id.* Insureds in Arizona are not bound to unknown policy terms which are beyond the range of reasonable expectation, but the reasonable expectations to be realized are those that have been induced by the making of a promise, and the concept must be limited by something more than fervent hopes engendered by loss. *Aetna Cas. & Sur. Co. v. Dannenfeldt*, 778 F.Supp. 484 (D. Ariz. 1991) The "doctrine of reasonable expectations" relieves a party from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them. *Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz. 9, 21 P.3d 395 (2001).

In this case, coverage for the loss is further supported by Ms. Munro's reasonable expectations. Again, Ms. Munro applied for coverage in 2012 with the expectation that the Insured Property would be insured against fire loss. There was (and is) no provision in the Policy that expressly excludes losses that occur when the Insured Property is rented to a third party. Instead, at two separate points in the Policy, the insured property is identified simply as the property shown on the Declarations page. It is only through a tenuous reading on an ambiguous term that Nationwide

---

[1] *Hill v. Nationwide* is another case where Nationwide attempted to deny coverage after a loss at a vacant residence using the "residence premises" definition. 214 Ga.App. 715, 448 S.E.2d 747 (1994). Nationwide lost. Nationwide argued in that case, as they do here, that because the insured did not "reside" at the home the loss was not covered. The Court rejected that argument because there was not a separate exclusion that expressly stated that a vacant home would not be covered. The declarations page listed the address of the insured property, and the insured property was used as a residence. So, despite the "residence premises" definition, there had to be a separate exclusion providing the insured with notice that coverage would be void if the property were vacant—or as in this case, rented.

points to that would give the insured notice that such a loss would be excluded.  This is non-negotiated household exclusion that is subject to the reasonable expectations doctrine—and will likely be unenforceable.  Nationwide and its agent(s)[2] happily accepted premiums (and commissions) for years of insurance on the Insured Property—premiums that were likely almost double what a landlord policy would have been. Despite denying coverage nine months ago, and contending that the Policy had been void since March 2016, Nationwide still retains those premiums. It was and is reasonable for Ms. Munro to expect that a loss such as this would be covered.  And the policy limit loss here is only half of the policy Ms. Munro was paying for—Ms. Munro was paying for personal property and loss of use as well, despite having no need for those coverages and not making claim now.  A Court will find that Nationwide's denial is made based upon an unenforceable exclusion, and that Nationwide must cover the claim.

I'm sure you know that the insurer/insured relationship is a special one in Arizona.  Arizona statutes and case law are incredible insured-friendly.  In addition to the rules of construction as well as the reasonable expectations doctrine, Arizona has a strong line of cases providing an insured recourse against unreasonable actions by their insurer.  Perhaps ironically in light of Nationwide's slogan, an insured is entitled to expect that his insurer is "on his side," at least to the extent of treating him honestly and fairly. *Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571 (1986).  If an insurer denies coverage without a reasonable basis and with reckless disregard for the rights of its insured—including, in many cases, an inadequate investigation or coverage opinion—that insurer can be liable for bad faith. *Norcia v. Equitable Life Assurance Society of U.S.*, 80 F.Supp.2d 1047 (D. Ariz. 2000).  In this case, Nationwide has relied solely upon the legal opinion of its claims associate to deny coverage, despite multiple demands by Ms. Munro, insurance professionals, and even counsel, leaving Ms. Munro with a burned-down house and no benefit of what she contracted and paid for.  This will be a situation that supports a bad faith claim and all the discovery that goes with it.

## **DEMAND**

My client is prepared to litigate this matter. For that reason, I enclose a draft breach of contract and bad faith lawsuit against Nationwide, which could be modified to include individuals at Nationwide as well as Nationwide's agents.  My client has authorized me to file this lawsuit. However, and despite the way my client has been treated, my client and I are willing to provide Nationwide one last chance prior to litigation to resolve this matter.

---

[2] Nationwide and its agent sold a policy in 2012 and ignored servicing that policy in any meaningful way until after this claim arose.  Insurance agents cannot be considered as professional without assuming the responsibilities and duties generally associated with such a status. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 398, 682 P.2d 388, 403 (1984). One of those responsibilities is to exercise that degree of care ordinarily to be expected from others in their profession.

Accordingly, Ms. Munro hereby demands that Nationwide tender its structure policy limit of $133,870.00 (the $121,700.00 policy limit plus the Policy's 10% allowance for code compliance that she will obviously have to expend upon repair) by **Monday, April 23, 2018**. The payment must be made to Ms. Munro in full, without any retention for depreciation. If Nationwide does not tender the policy limit to Ms. Munro by that date, the enclosed lawsuit will be filed and the parties can litigate the claim.  If litigation occurs, Ms. Munro will not only seek the principal amount due to her under the insurance contract but also her attorneys' fees and costs under the contract and Arizona's fee-shifting contract statute.

Should you have any questions, please feel free to contact me.

The Law Office of Christopher Goodman PLC

Christopher M. Goodman

Cc: Don Richart, Claims Associate (via first class mail)

Enclosure: Draft Complaint

8